Fuld, J.
Sometime during the week end of January 6 and 7, 1962, a trailer of Whippet Motors, Inc., loaded with 1,298 cartons containing drugs and cosmetics belonging to First National Stores, was stolen from Whippet’s terminal in Boston, Massachusetts. The theft was reported to the police of that city, immediately following its discovery, on Sunday, January 7. Three 'days later, on January 10, police officers of the New York City Police Department, acting pursuant to a search warrant, seized the stolen cartons as they were being removed by the defendants from certain premises—variously called a warehouse, plant and storage building — located in Jamaica, Queens County.
Following their indictment, and prior to trial, the defendants moved to suppress the evidence seized at the building on the ground that the officers had, without proper authorization, improperly executed the warrant in the nighttime (Code Crim. Pro., § 801). The judge who was later to preside upon the trial heard the motion and agreed with the defendants that .such nighttime execution “ was not authorized by the warrant ” (36 Misc *89 2d 204, 207).[1] Noting, however, that the search and seizure could be “upheld” without a warrant if the police had “probable cause to arrest the defendants for the commission of a felony ”, he directed a further hearing—before another judge — “ solely for the purpose of determining whether the search and seizure were made as an incident to a lawful arrest ” (36 Misc 2d, at pp. 206, 207).
Upon such hearing, there was evidence that the police had had the defendants under observation for some time; that they had “tailed” two of them to the premises in Jamaica; that, on January 8, 1962, one of the officers, Detective Sullivan, was told by an unnamed informant—whose tips, according to Sullivan, had “ proved correct ” on other occasions— that “ there was a stolen load of goods ” in that building and that Malinsky and Lustigman were “ involved ”; and that, on the day after receiving such information, the police returned to the premises and there saw the defendants and a large quantity of cartons.
It was on the next day, January 10, that Sullivan obtained the warrant which authorized a search of the building. He and three other officers thereupon proceeded to the premises and, around six o’clock, after observing the three defendants loading cartons onto a truck, showed their warrant, placed the defendants under arrest and seized the cartons. It was not until after the arrests had been effected that the officers learned that' the cartons and -the goods contained in them had, in fact, been stolen from Whippet’s motor terminal in Boston. Moreover, since the informer had not described either the goods or how they were packed, and the cartons had no identifiable markings on them, the detectives apparently had no.way of knowing, prior to making the arrests, that the boxes in question contained the stolen merchandise of which the informer spoke or, indeed, any other.
It was the defendants’ position upon the suppression hearing that Sullivan’s informer was nonexistent and that the police had actually acquired their information from an illegal wire tap. In any event, desirous of refuting the detective’s story, defense counsel sought to question him about his alleged informer and *90 the latter’s asserted reliability. The court, however, on objection by the district attorney, refused to allow the defense to elicit any facts as to the informer’s identity, his background or the source of his knowledge.. The judge also refused to permit the defendants to inspect and use, for the purpose of cross-examining him, certain notes which Sullivan acknowledged he had 'made “ in connection with [their] arrest ” on January 10.
At the termination of the hearing, the judge, with nothing before him to cast doubt on the existence of the informer, on his reliability or on the information he purportedly conveyed, concluded that probable cause had been shown for the arrests and denied the motion to suppress, in consequence of which the challenged evidence was received against the defendants upon the ensuing trial. The court found them guilty of the crime of concealing and withholding stolen goods and the Appellate Division affirmed the resulting convictions. On this appeal, here by leave of the Chief Judge, the defendants urge that the judge presiding at the second hearing committed error when he ruled, first, that the prosecution was not required to disclose the identity of the police informer and, second, that the defendants were not entitled to inspect the notes made by Sullivan.
As to the latter contention, the court is of the opinion that Detective Sullivan’s notes should have been turned over to the defendants for their inspection and possible use. We made it unmistakably clear in People v. Rosario (9 N Y 2d 286) that defense counsel must be permitted to examine a witness’ prior statement, whether or not it differs from Ms testimony on the stand, and to decide for themselves the use to be made of it on cross-examination, provided only that the statement “ relates to the subject matter of the witness’ testimony and contains nothing that must be kept confidential” (p. 289). And, obviously, it matters not whether the witness is testifying upon a trial or at a hearing. In either event, “ a right sense of justice ” entitles the defense to ascertain what the witness said about the subject under consideration on an earlier occasion.
The notes made by Sullivan in this case unquestionably relate to the subject matter of his testimony and, since there is no claim that they contain anything which has to be kept confidential, they should have been, without more, turned over to the defense. In view of our decision in Rosario (9 N Y 2d 286, supra), the judge *91 presiding may not allow the People to keep from the defendants’ counsel statements or notes made by a witness upon the ground that nothing in them could assist the defense or that no prejudice would result from withholding them.
There must, therefore, be a new hearing — at which the defendants will be entitled to examine and use the notes made by Sullivan — and the question arises, in connection with the defendants’ other contention, whether they will also be entitled to disclosure of the police informer’s identity. This is a more complicated and troublesome issue, requiring more extensive discussion.
A search, not authorized by consent or a search warrant, is deemed reasonable only if conducted as “ incident to a lawful arrest ” (People v. Loria, 10 N Y 2d 368, 373; see, also, Beck v. Ohio, 379 U. S. 89; Rios v. United States, 364 U. S. 253, 261-262; Henry v. United States, 361 U. S. 98, 100), and to effect such an arrest the arresting officers must have ‘ ‘ reasonable cause for believing” that a crime has been committed and that the person arrested is the party responsible (Code Crim. Pro., § 177).[2] As this court expressly recognized in People v. Coffey (12 N Y 2d 443, 452, cert. den. 376 U. S. 916), such reasonable cause may be provided by the communications received from an informer, as long as the information related is substantiated “ either [by] the informer’s own character and reputation or [by] the separate, objective checking of the tale he tells.” (See, also, Beck v. Ohio, 379 U. S. 89, supra.) In our judgment, the testimony of the police officers as to their observations, when taken together and in conjunction with the information which Sullivan declared he received from a reliable informer, establishes the requisite reasonable or probable cause. (Cf. Draper v. United States, 358 U. S. 307; People v. Marshall, 13 N Y 2d 28, 33-35; People v. Santiago, 13 N Y 2d 326; People v. Gary, 14 N Y 2d 730, cert. den. 379 U. S. 937.) But this is *92 not decisive of the question we are considering. The finding of probable cause necessarily rests upon acceptance of Sullivan’s credibility, and the conclusion (from the present record) that there was such probable cause does not resolve the defendants’ claim that they were denied a fair hearing because, by withholding the informer’s identity, the State deprived them of the only available method of rebutting Sullivan’s testimony — testimony so essential, the defendants assert, that without it a finding that probable cause existed would not be justified.
The government’is privilege of nondisclosure has for its purpose, the Supreme Court declared in Roviaro v. United States (353 U. S. 53, 59, 61), “ the furtherance and protection of the public interest in effective law enforcement ’ ’ and it ‘ ‘ recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.” The importance of the privilege to successful criminal investigation is self-evident but this does not mean it may be successfully invoked in every case. Of necessity, its “ applicability ” is limited by “ fundamental requirements of fairness ” (Roviaro v. United States, 353 U. S. 53, 60., supra) and, accordingly, the privilege may not be availed ,of, this court wrote in People v. Coffey (12 N Y 2d 443, 452, supra), when its assertion would seriously prejudice the defense " by making a fair hearing impossible ”. To phrase it as the Supreme Court did in Roviaro (353 U. S. 53, 61, supra), “ the privilege must give way” where “ the disclosure of an informer’s identity, or of the contents of his communication, * * * is essential to a fair determination of a 'cause ”.
Indeed, after noting that ‘ ‘ [m] ost of the federal cases involving this limitation on the scope of the informer’s privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause ”, the Supreme Court observed that “ [i]n these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication ” to sustain such a finding. (Roviaro v. United States, 353 U. S. 53, 61, supra [emphasis supplied]; see, also, Scher v. United States, 305 U. S. 251; People v. Coffey, 12 N Y 2d 443, supra; United States v. *93 Elgisser, 334 F. 2d 103, 110-111; United States v. Rosario, 327 F. 2d 561, 564; Costello v. United States, 298 F. 2d 99, 101-102; Priestly v. Superior Court, 50 Cal. 2d 812, 817-818; Note, 76 ALR 2d 262, 327-343; ALR 2d Supp. Service [1964], pp. 1659-1660.) This impresses us as sound. We would but add, though, that such evidence may be furnished by an independent witness to that communication — such as the district attorney (see People v. Coffey, 12 N Y 2d 443, 452, supra)—and by proof as to the reliability of the informer. If, however, the lawfulness of the search depends solely on the arresting officer’s unsupported testimony, the defendant is entitled to disclosure of the informer’s identity since the legality of the action taken by the police turns upon the believability of the information and not upon facts which the officer witnessed and upon which he could be cross-examined. (See Scher v. United States, 305 U. S. 251, 254, supra.)
The rationale underlying the rule has been well and aptly stated by the high court of California. “ If, ” as that tribunal observed in the Priestly case (50 Cal. 2d 812, 818, supra), “ an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. * * * Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer’s testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue. ’ ’ And, in considering whether such a requirement may “ unreasonably discourage the free flow of information to law enforcement officers or otherwise impede law enforcement ”, the court went on to say (p. 818), “ [a]dually its effect is to compel independent investigations to verify information given by an informer or to uncover other facts that establish reasonable cause to make an arrest or search. Such a practice would ordinarily make it unnecessary to rely on the communications from the informer to establish reasonable cause.”
The conclusion to be drawn from the decisions is clear. Disclosure of the informer’s identity is required only in those cases, and they are relatively rare, where there is insufficient evidence, *94 apart from the arresting officer’s testimony as to the informer’s communications, to establish probable cause. Where such separate evidence exists, the arrest and consequent search will be upheld without requiring disclosure of the informer. But where disclosure is demanded by the requirements of a fair trial — where, in other words, to refuse disclosure would completely deprive the defense of the opportunity of showing that there was in truth no reliable informer or, if there was, that his communication to the police was different from that testified to and that, for either of these reasons, the police did not have probable cause to make the arrest — the prosecution must either disclose or run the risk of having the arrest and search held illegal.
The Coffey case (12 N Y 2d 443, supra) states no contrary rule. There, the court sustained the privilege of nondisclosure because, in the majority’s view, a showing of probable cause did not depend solely upon the officer’s testimony of the communications from the avowed informer. Instead, as the court carefully pointed out (pp. 452-453), “ the fact of [the informer’s] existence and of his informing was * * * fully corroborated by the prosecuting attorneys” — who testified that they had spoken to him—and there was “ strong and dependable proof of the accuracy of his information ’ ’ since, before the arrest, “the principal elements of his story ” bearing on the commission of the crime “ were checked out and found plausible ”.
The record, now before us, of the hearings on the defendants’ motion to suppress is in sharp contrast. There is here no independent corroboration of the fact of the informer’s existence or of his informing, nor was there, prior to the arrests, any separate checking out of the principal elements of the informer’s story or even any dependable proof of the accuracy of his information. Before Sullivan had been told that “ there was a stolen load of goods ” in the building and that Malmsky and Lustigman were “involved”, the police, so far as the record demonstrates, had no evidence to establish probable cause for the defendants’ arrests. And their observations after receipt of the informer’s communication not only did not indicate that the defendants were engaged in crime but fell far short of substantiating the informer’s statement that there had been a theft or that the defendants were dealing with stolen goods. *95 True, the officers did see Malinsky and Lustigman, as well as the third defendant, placing cartons on a truck at the building but, quite obviously, these observations did not constitute independent evidence sufficient to corroborate the informer’s story of a crime or, in and of themselves, establish probable cause for an arrest. Indeed, the officers had no way of knowing, except insofar as it was perhaps indicated by the informer’s tip, that the defendants were wrongfully on the premises or that the cartons were stolen or contained stolen merchandise. The informer, so far as appears, had not described the goods which were stolen or mentioned that they were contained in cartons and, as already noted, the officers did not learn that the goods had actually been stolen until after the arrests.[3]
Careful study of the record, as it now stands, leads us to conclude that sufficient evidence has not been adduced either to substantiate Sullivan’s testimony that he received information from a reliable informer or to establish that, absent the informer’s communication, probable cause existed for the defendants’ arrests. We agree with the defendants that the whole structure of probable cause depends upon acceptance of Sullivan’s testimony that a reliable unnamed informer was the source of his information. This being the case, unless the prosecution is required to disclose the informer’s identity— so that he may be produced for possible questioning—the defendants will be denied the opportunity, to which they arc entitled, of rebutting the detective’s crucial testimony by showing, perhaps, that there was no informer, or, if there was, that he was unreliable to the knowledge of the police or that the information he gave was other than as testified to. Considered in light of the applicable principles, then, the case before us would seem to present the rather rare situation in which disclosure is required.
However, since it is felt that the police may have been in possession of additional corroborating details, not testified to upon the hearings already held, we believe that the People should be given a chance to elaborate on the facts and circumstances pre *96 ceding the arrest on January 10 in order to support Sullivan’s testimony of a communication from a reliable informer or to establish that the police, on the basis of their own investigation and observations, actually had probable cause to arrest the defendants. The present record, for instance, is silent as to what, if anything, the police knew, prior to effecting the arrests, of the ownership of the building in which the cartons were found, of the use for which that building was intended or to which it was put or of the defendants ’ connection with, or relationship to, the building. Testimony on these subjects, and perhaps others, may tend to prove that there was sufficient evidence of probable cause apart from the communication of the informer.
To recapitulate — although it is the conclusion of the court that, on the present record, disclosure of the identity of the informer would be required, we hesitate to direct such disclosure without giving the People a further opportunity of showing that the police actually received a tip from a dependable informer or had evidence, apart from or in addition to the informer’s communication, to establish probable cause for the arrests of the defendants. If the People meet this burden, and it will, in the first instance, be incumbent upon the judge presiding at the new hearing to decide the matter, the informer’s identity need not be revealed. On the other hand, if the evidence offered upon that hearing throws no more light on the circumstances surrounding the arrests of the defendants than that contained in the record now before us, the People must either disclose or run the risk of having the arrests, and the subsequent search, held illegal.
The determination of this appeal should be withheld and the case remitted to the Supreme Court, Queens County, for a further hearing on the motion to suppress.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke, Soileppi and Bergan concur.
Determination of the appeal withheld and the case remitted to the Supreme Court, Queens County, for a further hearing on the motion to suppress, in accordance with the opinion herein.

. Reaching this conclusion, it was unnecessary for the judge to consider the defendants’ alternative argument for suppression that the warrant had been issued without probable cause (Code Crim. Pro., § 793).

. The People, in order to prevail, are under the necessity of going forward in the first instance with evidence to show that probable cause existed both in obtaining a search warrant and in sustaining the legality of a search made, without a warrant, as incident to an arrest. (See People v. Gary, 14 N Y 2d 730, cert. den. 379 U. S. 937; see, also, Wong Sun v. United States, 371 U. S. 471, 479-480; United States v. Rivera, 321 F. 2d 704, 708; Cervantes v. United States, 263 F. 2d 800, 805.)

. It is, of course, fundamental that an arrest is not justified by what a subsequent search uncovers. (See, e.g., People v. Loria, 10 N Y 2d 368, 373-374, supra; Henry v. United States, 361 U. S. 98, 104, supra.)