[710 NYS2d 345]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK GARCIA, Appellant.

First Department, June 29, 2000

## APPEARANCES OF COUNSEL

*Karen Heiss Eisen* of counsel (*Penny Rosenberg* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Nancy E. Little,* New York City, of counsel (*M. Sue Wycoff,* attorney), for appellant.

## OPINION OF THE COURT

Tom, J. P.

Defendant was convicted of criminal sale and possession of a controlled substance arising out of a buy-and-bust operation by an undercover officer at 136th Street and Amsterdam Avenue in Manhattan. The only basis on which reversal is required concerns the outcome of the *Hinton* hearing and the consequences for appeal, in which regard we are constrained by Court of Appeals authority.

During jury selection, the prosecutor indicated that she would seek closure of the courtroom during the testimony of the undercover officer and the ghost officer. Defense counsel objected, indicating that defendant's girlfriend and uncle were present and wanted to attend the entire trial. The court indicated that it would rule on that issue after conducting a *Hinton* hearing. However, the court also indicated that it would either grant or deny the closure motion in toto, and thus declined to consider less restrictive alternatives. Two hearings were held, one for the undercover officer and one for the ghost officer. The first hearing commenced the same day that the objection was made, and continued the following day; the second hearing was shortly thereafter. The girlfriend and uncle apparently attended each day. At the hearings, although the officers testified to their fear of being recognized in open court, their continued, albeit sporadic, presence in the vicinity of the arrest, and the procedures they took to enter and leave court surreptitiously, no evidence was adduced regarding the specific objection raised by counsel: that defendant's girlfriend and uncle wanted to attend the entire trial. As noted, the court granted the closure motion in toto excluding both defendant's girlfriend and uncle.

The analysis of closure cases derives from the four-part standard of *Waller v Georgia* (467 US 39, 48). The movant must advance an overriding interest that is likely to be prejudiced if closure is not ordered; the closure must be no broader than necessary to protect that interest; the trial court must consider

reasonable alternatives to closure; and the trial court must make findings adequate to support closure (*supra*). As the Court of Appeals characterizes the fundamental right to an open trial, it is not absolute, and although it may yield to other interests "in rare circumstances only" there remains a "presumption of openness" (*People v Ayala*, 90 NY2d 490, 497, *cert denied* 522 US 1002).

Further, "no closing can be tolerated that is not preceded by an inquiry careful enough to assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons" (*People v Jones*, 47 NY2d 409, 414-415, *cert denied* 444 US 946).

At the outset, defendant's reference to a specified family member—and here his girlfriend should be accorded the same status as a family member (*People v Green*, 215 AD2d 309)—who has a "clear and definite desire to be present" preserves that challenge to closure (*People v Bass*, 259 AD2d 419, 420).

Under New York law, when a defendant is arrested in a typical buy-and-bust operation, two questions arise regarding closure: are the factual showings of potential harm to active undercover officers sufficient; and, if so, did the court, ordering closure, consider possible alternatives that were less restrictive than closure during the officers' testimony (*cf.*, *People v Ayala*, *supra*, at 494 [partial closure valid])? The compelling interest of the State in protecting the identities, and safety, of undercover officers is beyond dispute, as is the general validity of that interest in this case, where partial closure, at the least, would have been supported by the record. However, neither the court nor the prosecution even addressed the challenge presented by defendant that total closure, by excluding defendant's girlfriend and uncle, was overbroad. The court has to ensure that closure was no broader than was necessary to protect an officer's safety and must make adequate findings to support the closure (*People v Nieves*, 90 NY2d 426). That obligation may require inquiry by the court itself, and will require an articulation of the court's reasoning in support of the extent of the closure order (*People v Tolentino*, 90 NY2d 867, 869 [girlfriend wrongfully excluded; total closure summarily ordered]). Those findings were not made here. The absence of those findings, which is not cured in this case by any hearing evidence demonstrating that these individuals posed a risk, requires a reversal.

The prosecution's reliance on a general record to justify complete closure logically does not apply when defendant does

specify individuals, especially family members, to whom closure should not apply. The People must specifically demonstrate that, by excluding family, the closure order is not broader than necessary. The officer's mere discomfort at testifying in front of family is insufficient (*People v Green, supra*). Moreover, when the exclusion applies to an identified family member, the trial court's reasons must be "demonstrated and documented" in the record (*People v Kin Kan*, 78 NY2d 54, 57; *People v Nieves, supra*, at 430) by specific findings adequate to permit appellate review of the order (*cf., People v Ayala, supra*, at 501; *see, People v Lincoln*, 250 AD2d 409).

When no showing is made that the identified family member poses a threat to an officer's safety or to future undercover operations (*People v Bass, supra* [common-law wife; no threat shown]; *People v Manning*, 258 AD2d 279 [People conceded error in their failure to affirmatively show danger posed by defendant's aunts]; *People v Murray*, 268 AD2d 349 [no substantial probability that presence of defendant's wife, not shown to be involved with drug trafficking and not even living in the county, threatened officer; exclusion error]), closure affecting that family member is error. The Court of Appeals has held that it was error for a trial court to exclude family members from the courtroom when an undercover officer "expressed no trepidation about testifying before defendant's wife and children. Indeed, the officer never even mentioned defendant's family" (*People v Nieves, supra*, at 430). As we have stated elsewhere, "[a]bsent an expression of particularized fear * * * closure of the courtroom to defendant's immediate family" during the officer's testimony is unwarranted (*People v Rivera*, 220 AD2d 298, 299). That was not done here.

The People construe the absence of evidence by the defense regarding these individuals to constitute counsel's abandonment of his request for, at the most, only partial closure. Realistically, the dissent's conclusions also hinge on abandonment, especially insofar as no showing was made that these individuals posed any threats to the officers. However, the basis of defendant's opposition to the prosecutor's closure motion was that these individuals in particular should attend the entire trial—that was the very reason why the *Hinton* hearing was conducted. As we have recently stated, "[w]here the trial court is aware that the defendant's relatives have been attending the proceeding or that the defendant would like certain family members present, exclusion of those individuals is permitted only when necessary to protect the interest advanced

by the People in support of closure" (*People v Bass, supra,* at 420; *accord, People v Nieves, supra,* at 430; *compare, People v Martinez,* 82 NY2d 436, 444 [defendant made no mention of particular family or friends he wanted to remain; no obligation on court to elicit request]; *compare, People v Smith,* 266 AD2d 62 [no request for specific family members, and no indication that any had even been present during trial]). Both conditions are present here. As such, I do not see how an abandonment can be construed from the fact that counsel did not elicit testimony regarding the officers' specific fear arising from the specified individuals, especially when, immediately after the hearing, counsel maintained his objection that closure was overbroad.

The procedural issue follows from this. Defendant did not bear the burden to prove that the officers' fear was baseless, as to the specified individuals or as to the public at large. The burden remained with the prosecution, as the proponent of closure, to justify abrogation of the defendant's Sixth Amendment right to a public trial (*People v Tolentino, supra*). Hence, defense counsel's omission of cross-examination, especially in view of counsel's continuing objection that the closure order was overbroad, did not relieve the People of their burden to affirmatively prove that the specified individuals posed a threat to the officers.

Therefore, I conclude that the disposition is constrained by Court of Appeals authority requiring reversal.

Accordingly, the judgment, Supreme Court, New York County (Jeffrey Atlas, J.), rendered February 19, 1998, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree and sentencing him, as a second felony offender, to concurrent terms of 6 to 12 years and 1 year, respectively, should be reversed, on the law, and the matter remanded for a new trial.

RUBIN, J. (dissenting).

The record does not show that either of the persons defendant alleges to have been barred from the courtroom was actually present when the People sought closure. Furthermore, no application was made to limit closure so as to permit the attendance of the spectators. Therefore, the record does not reflect any denial of defendant's right to a public trial. Nor is the asserted error preserved for appellate review.

Defendant, who was arrested in a buy-and-bust operation, contends that his right to a public trial was violated because

the courtroom was closed to his uncle and girlfriend while the undercover officers gave testimony. On the morning of January 26, 1998, in the course of jury selection, the prosecutor announced her intention to seek closure. Defendant's attorney opposed the application, stating, "His uncle is here at the moment, his girlfriend is here, and they certainly would like to be permitted to sit through the trial * * * in its entirety." The court responded that it would take up the matter at a *Hinton* (*People v Hinton*, 31 NY2d 71, *cert denied* 410 US 911) hearing, "after the People's first witness testifies. You can make all that argument and also have the undercover to question with regard to those subjects."

That afternoon, the court held two *Hinton* hearings, each of which was conducted prior to the testimony given, respectively, by the undercover officer and by the backup or "ghost" officer. During the first hearing, defense counsel limited his cross-examination to issues concerning the undercover officer's safety and any threats he might have received, making no mention of defendant's friends and family. After the court announced that the People had "established a reasonable basis for closure of the courtroom," the court heard argument from defense counsel, who characterized the threats mentioned by the officer as "vague," "hearsay" and "non-specific." Counsel raised no objection to the court's ruling that the courtroom would be closed during the witness's testimony.

At the second *Hinton* hearing, defense counsel likewise made no mention of defendant's uncle and girlfriend, either during his cross-examination of the ghost officer or at any other time. After eliciting from the People their desire to have the courtroom closed during the backup officer's testimony, the court offered to hear argument from the defense. The exchange was as follows:

"THE COURT: I take it that the People feel under those circumstances that as with the other officer the courtroom should be closed during his testimony, correct?

"[THE PROSECUTOR]: That's my position, Your Honor.

"THE COURT: Counsel, I'll hear you.

"[DEFENSE COUNSEL]: Judge, my objection would be the same as it was before, so—

"THE COURT: All right, I don't see that there's any enormous difference between what's happening with this officer and what happened with the last officer. I think the circumstances are virtually identical. This officer actually was threatened in that area. My ruling's going to be the same.

"Under these circumstances I think the tests set forth by the case law are satisfied. The courtroom can be closed, and it will be closed."

Defense counsel took no exception to this ruling.

On appeal, defendant does not contend that Supreme Court erred in closing the courtroom to the general public; defendant argues only that closure was "overbroad" in that it operated to exclude his uncle and girlfriend from the courtroom. Defendant maintains that the People have failed to establish that defendant's friends and family members posed a danger to the safety of the undercover officers or to the integrity of their undercover work, noting that neither of the officers gave any testimony to that effect.

The issue is whether, under the particular circumstances of this case, the trial court was obliged to state any reason for excluding defendant's girlfriend or uncle or both from the courtroom during the testimony given by the two undercover officers. As there is nothing in the record that mandates making such an inquiry, I perceive no error in the court's rulings with respect to closure.

As to the first undercover officer, the defense took no exception whatsoever to the closing of the courtroom, and the propriety of this ruling is not preserved for review. As to the "ghost" officer, the only protest to the ruling was defense counsel's remark that "my objection would be the same as it was before."

As a general proposition, an appellate court is bound by the record. Simply stated, "Appeals must be decided on the content of the record" (*Fehlhaber Corp. v State of New York*, 65 AD2d 119, 131, *lv denied* 48 NY2d 604). While the trial transcript indicates that, during the morning session of January 26, 1998, defendant's "uncle is here at the moment, his girlfriend is here," there is no indication that either his uncle, his girlfriend, or both returned to court for the afternoon session, during which the court heard the testimony of the undercover officers. If neither the uncle nor girlfriend was present, it would explain why defense counsel never mentioned them during the *Hinton* hearings and why, after the court ruled in favor of closure, counsel never sought an order limiting closure so as to permit the attendance of one or both of these persons.

Defendant argues, in his reply brief, that "appellant's uncle and girlfriend were apparently still present when the courtroom was closed for the first *Hinton* hearing on the 26th." The only

record support for this conclusion is counsel's observation "without contradiction, that appellant's 'girlfriend has been here every day.' " However, even crediting the assertion, it does not controvert the distinct impression conveyed by the record of the proceedings that neither the uncle nor the girlfriend was present in court on the afternoon of the 26th. This Court should not speculate as to a fact dehors the record to assign error to the trial court's rulings.

As a second point, it is well settled that an asserted error must be preserved for appellate review by interjection of a timely objection on the record. As stated in *People v Gray* (86 NY2d 10, 20), "The chief purpose of demanding notice through objection * * * is to bring the claim to the trial court's attention." This may be achieved either by timely objection or, without registering any protest, where an application by the defendant is denied (CPL 470.05 [2]; *People v Rosen*, 81 NY2d 237, 245).

Where the People seek to close the courtroom for certain testimony, the defendant's right to a public trial is implicated, requiring that an overriding interest be demonstrated that is likely to be prejudiced; that closure be restricted to what is necessary to protect that interest; that the trial court consider reasonable alternatives; and that closure be supported by adequate findings (*Waller v Georgia*, 467 US 39, 48). The Court of Appeals has stated that if "the trial court is aware that the defendant's relatives have been attending the proceedings or that the defendant would like to have certain family members present, exclusion of those individuals must be necessary to protect the interest advanced by the People in support of closure" (*People v Nieves*, 90 NY2d 426, 430). On the authority of *Nieves*, defendant contends that reversal of his conviction is "mandated when family members are excluded without the necessary particularized showing."

The record is insufficient to establish that any person defendant wished to be present was excluded from the courtroom. Unlike *Nieves* (*supra*), where particular family members were identified and expressly excluded by the court, defendant did not identify any person or persons he wanted to be present during the testimony of the undercover officers. Defendant interprets *Nieves* to mean that once the defendant's desire to have family members present during the trial is made known, the trial court has an affirmative obligation to justify the exclusion of those family members from any stage of the proceedings for reasons " 'demonstrated and documented' in the record" (*supra*, at 430, quoting *People v Kin Kan*, 78 NY2d 54, 57).

A more restrictive standard is appropriate, as illustrated by this case. Defendant's interpretation presumes too much: that the trial court is aware that the defendant wants certain persons to attend his trial; that the court knows who these persons are; that these individuals are present at the time closure is sought; and that the court knows they are present and closure will therefore operate to exclude them from the proceedings. The practical problem, for the purposes of appellate review, is that only the trial court's awareness of defendant's general desire to have his uncle and girlfriend attend the proceedings has been established. The record does not reflect that either of these persons was excluded by the court's rulings. As in *People v Martinez* (82 NY2d 436, 444), "Defendant's sole objection and the entire argument before the trial court was concentrated on the sufficiency of the People's showing for closure."

The better rule is that, at such time as the People establish closure to be necessary to protect the safety of a witness, the defendant is required to identify any person he wishes to remain during the closed testimony. The record will then reflect that such person is present and identified to the court, that the defendant seeks to limit closure and that the question of whether or not the individual represents a threat to the witness is to be ascertained.

Case law supports such a procedure. In *People v Ramos* (90 NY2d 490, 504-505, *cert denied sub nom. Ayala v New York*, 522 US 1002), the Court of Appeals concluded: "There were 'findings adequate to support the closure' during the entirety of the undercover witness's testimony, as *Waller* requires (467 US at 48), and it could therefore be implied from the court's granting the People's motion that it considered excluding the public during that discrete part of the trial to be the least restrictive alternative that would ensure the officer's safety. If, *at that point*, the defendant had alternative measures in mind that he wished the court to consider, he had 'the responsibility of showing to the court's satisfaction that [they] would eliminate the dangers shown'" (quoting *Gannett Co. v DePasquale*, 443 US 368, 401 [emphasis supplied]). *Ramos* (*supra*, at 504) clearly rejects any affirmative obligation on the part of the court to "ask[ ] the defendant for particular family members he would like present."

The cases in which reversal rests on the exclusion of a family member involve the failure to limit closure to permit the attendance of specifically identified individuals (*e.g.*, *People v Nieves*,

*supra* [wife and children excluded]). In *People v Kin Kan* (78 NY2d 54, 58, *supra*), the Court of Appeals noted that, during the course of the *Hinton* hearing, the defendant's attorney "strenuously objected, complaining particularly that closure during the accomplice's testimony was not warranted and that Kan was entitled to have her family present to assist in her defense." The error in that case was clearly preserved for review: "The trial court did not specify or justify closure with respect to Kan's family on the record, despite her counsel's *specific objection* in that regard, and we discern no record basis for doing so" (*supra*, at 59 [emphasis added]). Similarly, in *People v Bass* (259 AD2d 419, 420), this Court emphasized that defense counsel had "specifically identified * * * defendant's 'common-law wife', and noted her presence in the courtroom prior to the court's ruling * * * Thus, the trial court was on express notice that the ruling would result in the exclusion of a family member who was actually present at the trial and whom defendant wished to have in the courtroom."

While the expressed desire that certain persons attend trial is sufficient to preserve for our review the propriety of closure in general, it does not preclude a finding that the issue has thereafter been abandoned (*see, People v Cobos*, 57 NY2d 798, 802; *People v Adams*, 267 AD2d 140; *People v Pressley*, 216 AD2d 202, *lv denied* 86 NY2d 800). In this matter, the trial court deferred argument and all rulings on the issue until the *Hinton* hearings, which, defendant concedes, was the proper protocol. Thus, defendant was afforded two occasions on which to present reasons for limiting closure upon the court's finding that it was required for the witness's safety. Having failed, on both occasions, to avail himself of the opportunity to specify his objection by way of a request to limit closure, defendant abandoned any such objection. The need to assess the threat that either defendant's uncle or girlfriend might have posed to the safety of the undercover officers was never brought to the attention of the court by a timely request to permit either of the spectators to be present during the officers' testimony (*People v Collins*, 254 AD2d 154, 155, *lv denied* 93 NY2d 851; *cf., People v Rivera*, 220 AD2d 298, 299 [defendant opposed exclusion of family]; *People v Green*, 215 AD2d 309, 310 [specific request to limit order of closure]). As stated in *People v Tolentino* (90 NY2d 867, 870), "defendant was obligated to alert the trial court to any particular friends or family members that he wished to remain in the courtroom during the closed testimony" (*see also, People v Smith*, 266 AD2d 62). As a result,

defendant failed in his obligation to promptly apprise the court of the specific basis of his claim so as to afford an opportunity to cure the error now asserted on appeal (*People v Gray*, 86 NY2d, *supra*, at 20-21). Therefore, the closure issue is unpreserved for our review, and this Court should decline to reach it in the interest of justice (*People v Graves*, 85 NY2d 1024, 1027; *see also*, *People v Rogelio*, 79 NY2d 843; *People v Cobos*, *supra*, at 802).

WALLACH and SAXE, JJ., concur with TOM, J. P.; RUBIN and ELLERIN, JJ., dissent in a separate opinion by RUBIN, J.

Judgment, Supreme Court, New York County, rendered February 19, 1998, reversed, on the law, and the matter remanded for a new trial.