[854 NYS2d 70]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ENRIQUE ALVAREZ, Appellant.

First Department, March 27, 2008

168

APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Rosemary Herbert* of counsel), and *Simpson, Thacher & Bartlett, LLP*, New York City (*Justin Engel* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Mary C. Farrington* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.

The primary issue on this appeal from defendant's conviction of criminal sale of a controlled substance in the third degree is whether the trial court's exclusion of defendant's girlfriend from the courtroom during the trial testimony of two undercover police officers violated his Sixth Amendment right to a public trial. Two corollary issues are whether the court abused its discretion in reopening the *Hinton* hearing after it had initially ruled that the girlfriend would not be excluded, and whether the court properly allowed the officers to testify under assumed names. Defendant also claims error in the trial court's denial of a jury charge on a lesser included offense.

We conclude that the court's initial *Hinton* ruling declining to exclude the girlfriend during the undercovers' testimony was erroneous, and that the court properly exercised its discretion in reopening the *Hinton* hearing to correct its error and to receive additional testimony regarding the particularized threat posed by the girlfriend. As defendant's remaining arguments lack merit, we affirm defendant's conviction.

### *Hinton* Hearing

Prior to commencement of the trial, the People sought to exclude all members of the public from the courtroom during the testimony of two undercover officers, with the exception of defendant's family members, and further requested that the officers be permitted to identify themselves during their testimony by their police department shield number. In arguing for closure, the prosecutor noted that defendant's girlfriend lived in the area of the drug sale, which raised an "additional concern."

The court ordered a *Hinton* hearing (*People v Hinton*, 31 NY2d 71 [1972], *cert denied* 410 US 911 [1973]), at which undercover officer (UC) #6813 testified that he was assigned to the 25th Precinct in Manhattan and had participated in approximately 250 narcotics purchases. He further testified that he intended to work as an undercover in the same neighborhood where the charged sale occurred during the week of the upcoming trial, and that he had also worked there during the previous week on a long-term investigation. He noted that several subjects of that investigation were still at large.

UC #6813 testified that on days he had to testify in court, he took precautions to protect his identity, such as using side entrances to the courthouse, appearing in plainclothes and never testifying under his own name. He stated that he had been threatened by subjects on multiple occasions, and believed that

testifying in his own name would jeopardize his and his family's safety, noting that an old friend had once located him by an Internet search. On cross-examination, UC #6813 conceded that he had never been threatened by this defendant or anyone associated with him.

At the conclusion of the testimony, the prosecutor asked that the general public be excluded from the courtroom, but stated that he would not object to the presence of defendant's family, unless those family members lived in the vicinity of the instant drug sale. The prosecutor noted that defendant's girlfriend, who was present in the courtroom, lived with defendant in the neighborhood of the sale and "we do not want her to be identifying the undercovers when they're out doing their job."

In opposition, defense counsel argued that there was no evidence of any particularized threats from either defendant or anyone associated with him, even while he was out on bail. Counsel opposed the exclusion of defendant's girlfriend, citing the lack of any evidence of a particularized threat involving her. Counsel further requested that if the undercover officer was permitted to testify anonymously, he do so under an assumed name, instead of a shield number.

In its initial *Hinton* ruling, the court partially granted the People's application. It ruled that a sufficient showing had been made that "disclosure of the detective's name and having him testify publicly as an undercover would likely prejudice his effectiveness and could very well jeopardize his family's safety." Therefore, the court announced that it would position a court officer outside the door to the courtroom, and in the event anyone wished to enter during the undercover's testimony, the officer would advise the court, which would then make a ruling. However, the court denied the People's request to exclude defendant's girlfriend, stating that the People had failed to make the "stronger showing" that is required to exclude family members. Finally, the court ruled that the undercover would be permitted to testify under an assumed name.

The next day, the prosecutor moved to reopen the *Hinton* hearing with respect to the nonexclusion of the girlfriend. The prosecutor informed the court that he had become aware of "specific information" indicating that the girlfriend was involved in the drug trade. Specifically, UC #6813 had reported to him that during the drug transaction charged in this case, defendant had told the undercover that his girlfriend had obtained some cocaine and then "cut him out of the deal." In

response to the court's inquiry as to why this evidence was not presented at the initial *Hinton* hearing, the prosecutor responded that he did not realize its significance because defendant's statement did not mention the girlfriend by name, and that he was "focusing on the statement as it relate[d] to the defendant and not focusing as to who the other person was." In addition, the prosecutor submitted case law to the court, holding that the exclusion of family members was justified based on their residence in the area of the crime and the ongoing undercover operations.

Defense counsel objected to the reopening of the hearing, arguing that the People had ample opportunity at the first hearing to bring out this information, but failed to do so, and that they were merely requesting a "mulligan," after the court had ruled in defendant's favor. Counsel further noted that it was not clear from defendant's alleged statement that he was referring to his present girlfriend, who was in court that day. The court ruled that the People had made a sufficient showing to reopen the hearing to accept further testimony on the issue of whether a particularized fear exists of testifying in the girlfriend's presence.[1]

At the reopened *Hinton* hearing, UC #6813 testified that defendant had told him that he and his girlfriend had purchased cocaine in Washington Heights and that she had "cut him out of the deal." UC #6813 understood this to mean that the girlfriend was involved in selling drugs. He further testified that because he understood that the girlfriend lived in the same area as the sale, an area where he continued to work as an undercover, he was concerned that she might be able to point him out as a police officer.

After the testimony, the prosecutor rested on the record and defense counsel argued that the court should "adhere to its original ruling." Counsel noted that the additional evidence was equivocal at best, since it did not name the girlfriend and didn't explicitly state that the girlfriend sold drugs. He also attacked the credibility of the evidence, noting that the undercover had never mentioned this alleged statement by defendant in his prior testimony or in the police reports.

---

1. In its ruling reopening the *Hinton* hearing, the court also took specific note of the cases cited by the prosecutor which hold that a family member's residence in the area of ongoing undercover operations will often justify closure.

In its second *Hinton* ruling, the court stated that the People have made "a particularized showing of concern about the presence of the defendant's girlfriend to warrant her exclusion during the testimony of undercover 6813." The court found that because the girlfriend lived in the area where the charged sale occurred and where the undercover was continuing to work, the undercover's safety and effectiveness could be compromised if she was permitted to observe his testimony in court.

A few days later, a third *Hinton* hearing was held for UC #5109, who acted as the "ghost" undercover in this case. UC #5109 testified similarly to UC #6813 as to the risk of testifying in his own name, and his fear of testifying in front of defendant's girlfriend. Defense counsel opposed, but noted that the issue was likely moot, since the girlfriend had been hospitalized and was unable to come to court on the day of UC #5109's scheduled testimony. The court ruled that it would follow the same procedure for closing the courtroom as utilized for UC #6813, and also that UC #5109 could also testify under an assumed name.

## The Trial

UC #6813's trial testimony established that on November 11, 2004, he approached defendant at the corner of 131st Street and Fifth Avenue and asked him for "krills," a street term for crack cocaine. Defendant asked how many the undercover wanted, and directed him to give him the money and then walk with him. UC #6813 handed defendant $10 in prerecorded buy money and walked with him to 2101 Madison Avenue, which is between 132nd and 133rd Streets. Defendant led the undercover into the lobby and then went upstairs. Defendant returned a few minutes later and handed UC #6813 a plastic twist containing a substance that later proved to be cocaine.

Subsequently, the two walked to 2114 Fifth Avenue, where defendant said he lived. During the walk, defendant made the statement about his girlfriend cutting him out of a drug deal, and also said that the next time the undercover wanted to buy drugs, he should come to 2114 Fifth Avenue and ask for "Cuba," which was defendant's nickname. Shortly thereafter, as he was leaving the scene, the undercover observed the backup team arrest defendant, who had no prerecorded buy money or drugs on his person.

## Jury Charge

At the close of the evidence, defense counsel requested that the court charge the jury on the agency defense. The People opposed the application, but alternatively argued that if the jury was given an agency charge, the court should also submit the charge of criminal possession of a controlled substance in the seventh degree as a lesser included offense of the third-degree sale charge. The prosecutor explained that a reasonable view of the evidence existed that defendant committed the crime of possession, but not sale, since once the agency defense was charged, the jury would be entitled to conclude that even though he did not act as a seller, defendant indisputably possessed the cocaine that he delivered to the undercover, albeit in his capacity as agent of the buyer.

Defense counsel initially argued that the submission of the lesser included offense might confuse the jury, but nevertheless agreed with the prosecutor that it was a lesser included offense under *People v Johnson* (45 NY2d 546 [1978]). In the end, defense counsel did not affirmatively join the prosecutor's request to charge; nor did he oppose it ("I do not believe there's not a basis [for the lesser included charge]").

Ultimately, the court ruled that it would grant the agency charge, but deny the lesser included charge. While conceding that under *Johnson* the possession charge was a lesser included of the third-degree sale charge, it nevertheless found that there was no reasonable view of the evidence that defendant merely possessed the cocaine, citing *People v Scarborough* (49 NY2d 364 [1980]), since such a finding would require the jury to indiscriminately reject and accept portions of the undercover's testimony.

## Discussion

Defendant raises four arguments in support of his appeal: (1) the trial court abused its discretion in granting the People's request to reopen the *Hinton* hearing after a decision on the merits; (2) the exclusion of defendant's girlfriend during a portion of the trial violated his Sixth Amendment right to a public trial; (3) the court violated defendant's confrontation rights by permitting the officers to testify under assumed names; and (4) the court committed reversible error in refusing to submit to the jury the lesser included charge of criminal possession of a controlled substance in the seventh degree.

We address the issue of courtroom closure first. A criminal defendant's right to a public trial is guaranteed by the Sixth

Amendment to the United States Constitution and has been described by the Court of Appeals as "fundamental but not absolute" (*People v Kin Kan*, 78 NY2d 54, 57 [1991]). Thus, while it is undisputed that trial courts "possess 'inherent discretionary power' to exclude members of the public from the courtroom" (*People v Ramos*, 90 NY2d 490, 497 [1997], *cert denied sub nom. Ayala v New York*, 522 US 1002 [1997], quoting *Hinton*, 31 NY2d at 75), such power should be exercised "sparingly and only after balancing the competing interests 'with special care' " (*People v Nieves*, 90 NY2d 426, 429 [1997], quoting *Waller v Georgia*, 467 US 39, 45 [1984]).

In *Waller,* the United States Supreme Court set out a four-prong test for determining whether a courtroom closure violates a criminal defendant's Sixth Amendment rights: (1) the party seeking closure must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support closure (*id.* at 48). New York courts have adopted this standard (*see People v Ramos*, 90 NY2d at 497; *People v Martinez*, 82 NY2d 436 [1993]; *People v Kin Kan*, 78 NY2d at 57-58).

The Court of Appeals has also recognized that a criminal defendant's interest in having the courtroom open to members of his or her family is a compelling one (*Kin Kan* at 59), which necessitates even more careful consideration of the *Waller* factors (*see Nieves* at 430 [where trial court is made aware that defendant would like to have family present, exclusion of those individuals must be necessary to protect the interest advanced by the People in support of closure]). Thus, in order to establish that closure is no broader than necessary with respect to a defendant's family member, the prosecution must show a "substantial probability" that the undercover officer's safety would be jeopardized by the presence of the family member during the undercover's testimony (*Nieves* at 431), and the threat must be particularized as to each family member sought to be excluded (*see Nieves* at 430-431; *People v Gutierez*, 86 NY2d 817, 818 [1995]; *People v Garcia*, 271 AD2d 81, 84 [2000], *affd* 95 NY2d 946 [2000]).

Because it is relevant to the issue of the propriety of reopening the *Hinton* hearing, we examine the court's initial *Hinton* ruling first. As indicated, UC #6813's testimony established his involvement in over 200 narcotics purchases, that he intended

to work as an undercover officer in the neighborhood of the instant crime during the week of the trial, that he had several subjects still at large, that he had taken precautions in entering the courthouse, and that he had been threatened by subjects in the past. He told the court that testifying in his own name would jeopardize his and his family's safety. Finally, although the undercover did not expressly state his fear of testifying in front of defendant's girlfriend, the record makes clear that she was a specific focus of the prosecution's application because she lived in the neighborhood where the undercovers were actively operating.

In light of the above showing, the motion court should have followed well-established precedent holding that the exclusion of a defendant's family member from the courtroom will be justified when such family member lives in the area where the officer is actively engaged in undercover operations. Indeed, appellate courts have uniformly held that such a showing will establish a substantial probability that an overriding interest will be prejudiced by the undercover's open-court testimony (see *People v Goris*, 305 AD2d 178, 179 [2003], *lv denied* 100 NY2d 620 [2003]; *People v Blake*, 284 AD2d 339 [2001], *lv denied* 96 NY2d 916 [2001]; *People v Powell*, 246 AD2d 494 [1998], *lv denied* 92 NY2d 859 [1998]; *People v Feliciano*, 228 AD2d 519 [1996], *lv denied* 88 NY2d 1068 [1996]).

Plainly, because both undercovers continued to work in an undercover capacity in the same area where the sale occurred and defendant's girlfriend lived, a credible and legitimate threat existed that the girlfriend might spot the officers on the street during their operations and recognize them from court (see *People v Ramos*, 90 NY2d at 499 [prosecution met burden of showing prejudice to overriding interest where, among other things, officers expected to resume undercover operations in area of arrest within a day and took precautions in entering courthouse]). Obviously, exposing their identities in this manner could have dangerous consequences, and such danger cannot be overlooked merely because neither defendant nor any of his associates had personally threatened either officer in the past.

The cases cited by defendant in support of his argument that a family member's residence in the area of ongoing undercover operations is insufficient to justify closure are distinguishable. Although in *People v Nieves* (90 NY2d at 430-431) and *People v Gutierez* (86 NY2d at 818) the Court of Appeals held that the

trial courts' exclusion of those defendants' family members was unconstitutionally overbroad, critical to each of these holdings was the fact that neither undercover officer had expressed any particularized fear of testifying in the presence of the defendants' family members (*see also People v Kin Kan*, 78 NY2d 54 [1991], *supra*; *see also People v Garcia*, 271 AD2d at 82 [courtroom closure overbroad where court stated it would grant or deny *Hinton* application "in toto," without consideration of specific relatives]; *People v Green*, 215 AD2d 309 [1995] [prosecution failed to establish officer's concern over defendant's family or that he continued to work as an undercover in that area]).

Here, in contrast, the prosecutor's *Hinton* application was specifically directed at the exclusion of the defendant's girlfriend from the outset, and the record clearly shows that the basis for the prosecution's concern was her residence in the specific area of continuing undercover operations (*Ramos*, 90 NY2d at 499; *compare Nieves* at 431 [closure overbroad where area of defendant's residence was not discussed at *Hinton* hearing and played no part in court's decision]; *People v Cooper*, 228 AD2d 297 [1996], *lv dismissed* 89 NY2d 863 [1996] [exclusion of mother of defendant's fiancée impermissibly broad where no fear of family stated and no evidence that mother resided in area]).

Even assuming, without deciding, that the trial court's erroneous *Hinton* ruling is not reviewable on this appeal by defendant (*see People v LaFontaine*, 92 NY2d 470, 473-474 [1998]; CPL 470.15 [1]), it is relevant to the court's discretionary determination to reopen the *Hinton* hearing. It is defendant's position that under *People v Havelka* (45 NY2d 636 [1978]), the prosecution is afforded only one full opportunity to present evidence of a dispositive issue at a pretrial hearing, and that the court violated this rule by allowing the prosecution a second chance to introduce evidence of the girlfriend's involvement in the drug trade, despite its availability at the time of the initial *Hinton* hearing. We disagree for two reasons.

First, we do not find *Havelka* applicable under the circumstances of this case. In *People v Malinsky* (15 NY2d 86, 95-96 [1965]), the Court of Appeals established the rule that although the prosecution is generally entitled to a single opportunity to meet its evidentiary burden at a pretrial suppression hearing, where an error of law is committed by the hearing court which directly causes the prosecutor to fail to offer potentially critical evidence, a rehearing may be ordered. The suppression court in

*Malinsky* had denied disclosure of a crucial informant's identity, and then denied the defendant's motion to suppress. After defendant was convicted, he argued on appeal that the suppression court erred by not requiring the prosecution to disclose the identity of the informant. Although the Court of Appeals agreed with the defendant that denial of disclosure of the informant's identity was erroneous, it did not reverse, but instead held the appeal in abeyance and remanded for a rehearing. In the *Malinsky* Court's view, the prosecution was entitled to at least one opportunity "to prove that there was sufficient evidence of probable cause apart from the communication of the informer" (15 NY2d at 96).

The Court of Appeals has applied the *Malinsky* rule in subsequent cases to permit a rehearing on a suppression motion where an error of law is committed by the hearing court that causes the People to fail to offer an alternative justification for the search or seizure (*see People v Crandall*, 69 NY2d 459, 466-467 [1987] [Appellate Division properly remitted case to hearing court where suppression court's erroneous ruling upholding "oral search warrant" deprived People of opportunity to establish alternative justification]; *People v Payton*, 51 NY2d 169, 177 [1980] [court's erroneous ruling upholding arrest based on then-valid statute required remand for hearing court to provide People with opportunity to establish exigent circumstances]; *People v Green*, 33 NY2d 496 [1974] [proper to remit for rehearing to consider search incident to lawful arrest justification, after hearing court erroneously upheld search that went beyond scope of valid search warrant]).

In *Havelka*, however, the Court distinguished the *Malinsky* line of cases on the ground that "[n]o erroneous ruling interfered in any way with the People's opportunity to advance evidence to justify the challenged police activity" (45 NY2d at 644). Although the suppression court's ruling in *Havelka* was, in fact, erroneous, the Court apparently found that the prosecution was not impeded from providing alternative justifications, since two witnesses were available but not called by the prosecution.

Assuming that the rules regarding the reopening of suppression hearings established in *Malinsky* and *Havelka* are applicable to *Hinton* hearings, there was clear judicial error in this case that justified the prosecution's request to reopen the hearing to introduce further evidence. As the prosecutor argued in his request to reopen, established case law permitted the exclu-

sion of defendant's family member if such person lived in the area of ongoing undercover operations (*see People v Ramos*, 90 NY2d at 499; *People v Goris*, 305 AD2d at 179; *People v Blake*, 284 AD2d at 339-340). In fact, the motion court essentially conceded its earlier error by stating that "whether she is a drug dealer or not, [defendant's girlfriend] pose[d] a particularized threat to [the undercover's] future effectiveness" since she lived with defendant in the area where the undercover continued to work.[2] Accordingly, because well-established precedent eliminated any incentive to provide further evidence justifying the girlfriend's exclusion (*see People v Crandall*, 69 NY2d at 466), and the court's judicial error essentially prevented the People from satisfying their burden at the initial *Hinton* hearing, the motion court providently exercised its discretion in reopening the hearing and reconsidering its ruling.

A second reason supporting the trial court's discretionary determination to reopen the *Hinton* hearing may be found in the distinct purposes of suppression and *Hinton* hearings. At a suppression hearing, the prosecution generally undertakes to meet its burden of demonstrating the propriety of the police conduct by eliciting testimony from police witnesses regarding the facts underlying a search or seizure, an identification procedure or the taking of an oral or written statement. Most critically, the testimony usually consists of past facts relating to the police investigation, which often have occurred months before the hearing and which are frequently documented in police reports. As such, the evidence offered at a suppression hearing is usually known to the prosecution well in advance of the hearing, and is not generally subject to change.

In contrast, the purpose of *Hinton* hearings is not to uncover past facts regarding a police investigation in order to determine the admissibility of trial evidence. Instead, the evidence offered by the prosecution at a *Hinton* hearing generally relates to existing safety risks posed to undercover officers by virtue of their imminent open-court testimony. By its very nature, the *Hinton* inquiry is a more fluid one, requiring the prosecution to demonstrate actual or potential threats to the officers' safety, a nexus between those threats and their in-court testimony, and, with

---

**2.** Further evidencing her concession of error, the trial judge later stated that "she doesn't have to be a drug seller *under this case law* to be barred from this testimony. So that finding [that defendant made statements suggesting she was a drug seller] is not essential, okay. That's my ruling" (emphasis added).

respect to the exclusion of family members, a particularized threat posed by each individual family member. This analysis necessarily requires a continuing and ongoing assessment of the circumstances surrounding the assignments of the undercovers, their frequency of testifying at the courthouse and a contemporaneous evaluation of those present in the courtroom at the time of the *Hinton* hearing and trial. Viewed in this light, the *Hinton* inquiry must be treated with significantly more flexibility and wider discretion in considering a party's request to reopen the proceedings to consider additional argument or proof.

The need for greater flexibility and discretion in *Hinton* hearings is aptly illustrated in the circumstances of this case. Here, the court's error of law might have placed the undercover officers' safety at significant risk, had the court not exercised its discretion in reconsidering its apparent error and hearing additional evidence uncovered by the People. While defendant, citing *Havelka*, argues that permitting the People "a second chance to succeed where once they had tried and failed" (*People v Bryant*, 37 NY2d 208, 211 [1975]) would encourage abuse in the form of tailored testimony "to fit the court's established requirements" (*Havelka* at 643), we believe that the hearing court was more than up to the task of evaluating the risk of manufactured testimony. Here, the prosecutor stated that he had been aware of defendant's statement about his girlfriend's involvement in the drug trade prior to the initial hearing, but did not realize its significance to the *Hinton* issue until after such hearing was concluded. In our view, it was within the hearing court's broad discretion to consider the credibility of this assertion, and we find no abuse in this instance in permitting additional evidence on the closure issue. We note that a *Hinton* ruling based on an incomplete record could have immediate and dangerous consequences regarding the safety of undercover police witnesses. Accordingly, broad discretion should be afforded trial courts in this highly sensitive area.

◼ We also reject defendant's argument that his confrontation rights were violated by the trial court's ruling permitting the undercovers to testify under assumed names. Applying the three-prong analysis enunciated in *People v Stanard* (42 NY2d 74 [1997], *cert denied* 434 US 986 [1977]) and reaffirmed in *People v Waver* (3 NY3d 748 [2004]), the court correctly ruled that the prosecution's evidence at the initial *Hinton* hearing was sufficient to establish that the officers should be excused from disclosing their names due to safety concerns, and that

such concerns outweighed defendant's interest in learning the names of the officers (*see People v Smith*, 33 AD3d 462, 463-464 [2006], *lv denied* 8 NY3d 849 [2007]; *People v Henderson*, 22 AD3d 311, 312 [2005], *lv denied* 6 NY3d 813 [2006]).

■ Defendant's final argument that the trial court committed reversible error in refusing to submit to the jury the lesser included offense of seventh-degree possession is unpreserved for appellate review, and we decline to review in the interests of justice (CPL 470.05 [2]). As mentioned, defense counsel never requested the charge down, and even suggested that such an instruction might confuse the jury. By failing to request that the court charge the lesser included or by failing to object to its refusal to charge, defendant failed to preserve an issue of law for this Court's review (*People v Buckley*, 75 NY2d 843, 846 [1990]; *People v Ware*, 303 AD2d 173, 174 [2003], *lv denied* 100 NY2d 543 [2003]; *People v Lee*, 176 AD2d 966 [1991], *lv denied* 79 NY2d 859 [1992]; *see also People v Purcell*, 103 AD2d 938, 939 [1984]).

Nor did the prosecutor's request that the court charge the lesser included offense suffice to preserve the issue on defendant's behalf (*People v Buckley*, 75 NY2d at 846). Although a 1986 amendment to CPL 470.05 (2) broadened the circumstances under which an error of law is preserved for appellate review where, "in response to a protest by a party, the court expressly decided the question raised on appeal" (L 1986, ch 798, § 1), this amendment merely "eliminate[d] the need for a nexus between the ground advanced for the protest and the rationale for the ruling," but "[did] not relieve counsel from the duty of making a protest to preserve an error of law" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.05, at 11; *see also People v Colon*, 46 AD3d 260, 263 [2007] ["(t)o read out of CPL 470.05 (2) the requirements of a timely 'protest by a party' and a causal nexus between the protest and the question 'expressly decided' would violate a fundamental canon of construction"]). Thus, in order to preserve a question of law regarding the failure of the trial court to charge a lesser included offense, a defendant must individually request the charge or protest the failure to give it, and cannot rely on the People or a codefendant to do so on his or her behalf (*Buckley* at 846 ["(f)or tactical reasons codefendants might take different positions on the desirability of various instructions to the jury and each must specify his or her objection to preserve legal error with respect to lesser included

offenses"]). We note that, here, defense counsel appeared to make the tactical decision to rely on the agency defense in order to gain an outright acquittal of the sale charge, the only charge submitted to the jury.

■ Even if the issue was preserved, we would find no reversible error in the refusal to charge the lesser included. In *People v Glover* (57 NY2d 61 [1982]), the Court of Appeals established a two-pronged test for determining whether a defendant is entitled to a lesser included offense charge. "First, defendant must establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct. Secondly, there must be a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (*People v Van Norstrand*, 85 NY2d 131, 135 [1995]; *see Glover* at 63; CPL 300.50 [1]). In applying this second prong, we must view the evidence in a light most favorable to the defendant and be guided by the principle that a jury is free "to accept or reject part or all of the defense or prosecution's evidence" (*People v Johnson*, 45 NY2d at 549, quoting *People v Henderson*, 41 NY2d 233, 236 [1976]).

Assuming, without deciding, that the first prong of *Glover* was met,[3] the court properly denied the request to charge the lesser included offense because there is no reasonable view of the undercover's testimony in this case that defendant unlawfully possessed narcotics, but did not sell them. Under established Court of Appeals precedent,

> "where proof of guilt of the greater and lesser offenses is found essentially in the testimony of one witness, a charge-down to the lesser offense is appropriate where it would be reasonable for the jury to reject a portion or segment of the witness' testimony

---

**3.** There is a split in authorities on the issue of whether seventh-degree drug possession is a lesser included offense of criminal sale of a controlled substance. In several pre-*Glover* holdings, the Court of Appeals held that under CPL 1.20 (37), the charge of simple drug possession is a lesser included offense of those crimes charging drug sales (*People v Johnson*, 45 NY2d at 549; *People v Jenkins*, 41 NY2d 307, 313-314 [1977]; *People v Malave*, 21 NY2d 26, 29-30 [1967]). However, there are several post-*Glover* Appellate Division decisions that have squarely held that "possession offenses relating to controlled substances are not lesser included offenses of those crimes prohibiting their sale" (*People v Cogle*, 94 AD2d 158, 159 [3d Dept 1983]; *see also People v Yon*, 300 AD2d 1127, 1128 [4th Dept 2002], *lv denied* 99 NY2d 621 [2003]; *People v Reed*, 222 AD2d 459, 460 [2d Dept 1995], *lv denied* 87 NY2d 976 [1996]; *People v Teixeira*, 101 AD2d 818 [1984]).

establishing the greater offense, while crediting that portion of the testimony establishing the lesser crime" (*People v Negron*, 91 NY2d 788, 792 [1998]).

Here, however, there was no rational basis to reject the undercover's testimony that he and defendant negotiated and consummated a sale of a "twist" of cocaine, while simultaneously accepting the same officer's testimony that defendant possessed the cocaine that he hand-delivered to the officer. The integrated testimony of the undercover was either true or it was not; a partial credit is not sustainable on the facts of this case (*see id.*; *see also People v Scarborough*, 49 NY2d at 371-373).

Defendant's argument that a reasonable view of the evidence exists that he possessed, but did not sell, drugs rests on the agency defense. He contends that once the court determined that a reasonable view of the evidence exists that defendant was acting solely as an agent of the undercover-buyer, a corresponding reasonable view of the evidence would exist that defendant possessed the narcotics solely in this capacity as agent, and not as a drug seller dispensing his wares (*see e.g. People v Carr*, 41 NY2d 847, 848 [1977], *revg* 49 AD2d 656, 657 [1975] *on dissenting mem*).

Although the argument has some facial appeal, it is effectively refuted by the overwhelming evidence that defendant was acting as a drug seller in this case. The undercover's testimony showed that defendant exhibited salesmanlike behavior by asking the undercover how many "krills" the undercover wanted and accepting $10 of prerecorded buy money from him. Then, defendant brought the undercover into a building from which he obtained drugs, and consummated the sale in a hand-to-hand transaction. Finally, defendant subsequently engaged the undercover in a conversation about his and his girlfriend's drug dealing, and invited him to return for more drugs.

Although the trial court concluded that a reasonable view of agency existed, we find that the defense was barely supportable under the facts of this case and was properly rejected by the jury that considered it (*see People v Ortiz*, 76 NY2d 446, 449-450 [1990]). The fact that defendant appeared to directly profit from the sale and discussed other drug dealings with the undercover provided compelling evidence that this was not a favor for a buyer, but rather a commercial transaction (*see People v Herring*, 83 NY2d 780, 782-783 [1994]; *People v Lam Lek Chong*, 45 NY2d 64, 75 [1978], *cert denied* 439 US 935 [1978]). In light of the weak agency defense and the substantial evidence that de-

fendant was acting as a drug seller, the court properly denied the prosecutor's request to charge the lesser included offense of possession in the seventh degree (*People v Negron*, 91 NY2d at 793-794).

In any event, even if the failure to charge down constituted error, such error was harmless in light of the overwhelming evidence of defendant's guilt (*People v Gray*, 232 AD2d 179, 179-180 [1996], *lv denied* 89 NY2d 1093 [1997]; *see also People v Jones*, 3 NY3d 491, 497 [2004] [overwhelming evidence disproved justification defense, and there was no reasonable possibility that the verdict would have been different had the court given the requested instruction on the home exception to the duty to retreat]).

Accordingly, the judgment of the Supreme Court, New York County (Marcy L. Kahn, J.), rendered August 30, 2005, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 4½ to 9 years, should be affirmed.

TOM, J.P., FRIEDMAN and SWEENY, JJ., concur.

Judgment, Supreme Court, New York County, rendered August 30, 2005, affirmed.