[750 NYS2d 604]

# The People of the State of New York, Respondent, v Juan Sanabria, Appellant.

First Department, December 5, 2002

### APPEARANCES OF COUNSEL

*Zaharah R. Markoe* of counsel (*Elizabeth F. Bernhardt* on the brief; *Robert T. Johnson, District Attorney*, Bronx County, attorney), for respondent.

*Nafiz Cekirge* of counsel, New York City (*David Crow* on the brief; *Andrew C. Fine, Legal Aid Society*, Brooklyn, attorney), for appellant.

### OPINION OF THE COURT

RUBIN, J.

Defendant contends that he was deprived of his Sixth Amendment right to a public trial, arguing that the People failed to establish any overriding interest subject to prejudice if the courtroom had remained open. The People argue that this issue is unpreserved for appellate review because defendant failed to object to a limited closure of the courtroom during the testimony of an undercover officer. We find both contentions to be without merit and hold that where it is demonstrated that the ability of the police to conduct undercover operations in a specific area would be compromised by the exposure of a police officer to undue risk of identification, an overriding interest is established that justifies narrowly tailored measures to safeguard the identity of the witness. Where the defendant fails in his obligation to advance more limited means to accomplish this purpose, the propriety of the measures employed to effect the limited closure is unpreserved for review.

Defendant sold three vials of crack cocaine to an undercover detective on the northeast corner of 138th Street and Cypress Avenue in Bronx County. The sale was witnessed by a backup or "ghost" officer, who was called to testify at trial. The officer related concerns for his safety to the Assistant District Attorney, who requested that the court "close the courtroom to everyone besides the defendant's immediate family" during the undercover officer's testimony.

In the face of defense counsel's opposition to the People's application, the court conducted a *Hinton* hearing (*People v Hinton*, 31 NY2d 71, *cert denied* 410 US 911) immediately prior to the officer's taking the stand. The officer testified that he was involved in undercover operations in the 40th Precinct, both purchasing narcotics and acting as a ghost officer for the protection of other officers making purchases. He stated that he expected to return to the vicinity of 138th Street and Cypress Avenue to participate in future operations in the same capacity. He indicated that he had no ongoing investigations or pending cases in that area; however, subjects of previous investigations conducted in proximity to the site of defendant's arrest were still at large (so-called "lost subjects"). While he had not observed any of these lost subjects near the courthouse, he had remained in the Assistant District Attorney's office prior to testifying for the precise purpose of avoiding courthouse encounters. He expressed concern for his personal safety if he were to give testimony in open court, stating a fear that "I'll be recognized when I'm in the street, when I'm trying to do a B[uy] and B[ust]."

After receiving this testimony and listening to the arguments of counsel, the court noted that "none of the [p]eople that he's arrested or the undercovers he's ghosted for have cases pending" and that 138th Street and Cypress Avenue is located at some distance from the courthouse. Therefore, "people from that neighborhood are not gonna just be w[a]ndering * * * into this courthouse as they might if he were conducting undercover operations here in this neighborhood, and you might have people who walk into a courtroom, which is people's right, I just don't see that there is a particular need, a compelling need to close the courtroom [for] this officer." The court further indicated that no member of the public had yet come into the courtroom and that there was "nothing about this case that has any special notoriety that is going to attract people."

The court did, however, indicate its "concern as to whether people from the area of 138th and Cypress might come in and identify him and jeopardize him." The court therefore proposed that a court officer be stationed at the door to ask those seeking entry where they reside. Should anyone indicate residence in the vicinity of the location of the arrest, the court proposed to interrupt the proceedings to discuss the matter with counsel and then render a decision whether to exclude or admit the individual. The court concluded by asking each attorney, individually, if this arrangement would be agreeable, to which defense counsel responded, "That's fine."

The jury then heard the testimony of the undercover officer. The court noted for the record that "during this witness's testimony, the only people that did enter the courtroom were two people who I knew to be attorneys." The court further observed that no one else had sought to gain admission.

The parties to this appeal frame their dispute in terms of whether, under these circumstances, defendant waived his Sixth Amendment right to a public trial. The People contend that defendant's acquiescence in the limited screening procedure ultimately adopted by the court to protect the witness renders the question of closure unpreserved for appellate review. Defendant answers that even a limited restriction on access to the courtroom necessarily implicates his Sixth Amendment rights. While these Sixth Amendment considerations are certainly material, the constitutional rights possessed by defendant are only part of any analysis of the propriety of closing a courtroom. Determination of this issue involves more than the rights of the defendant and, significantly, the origin of the rules governing closure can be traced directly to the First Amendment.

Openness of judicial proceedings is a defining tenet of Anglo-American law, the importance of which extends to both the defendant and to society at large (see *United States v Doe*, 63 F3d 121, 125-126). But, as the Court of Appeals stated in *People v Martinez* (82 NY2d 436, 441), "The guarantee of a public trial (US Const 6th Amend; Civil Rights Law § 12; Judiciary Law § 4) is fundamental, but neither absolute nor inflexible." While a court has the inherent discretion to exclude members of the public, its exercise is subject to the limitation that "unusual circumstances" must be shown to require it (*id.*, quoting *People v Hinton, supra* at 76).

The question before this Court is whether the limited measures utilized by the trial justice to restrict public access to the courtroom are justified by the interests of the witness in his safety and of the New York City Police Department in conducting undercover operations involving this officer. As defendant candidly concedes, "Both the People and the Defendant agreed to this screening procedure." However, analysis appropriately proceeds not on whether the right to a public trial has been waived, as the parties frame the issue, but on whether each party has fulfilled the obligations imposed upon it by law at a particular stage of the proceedings.

At the outset, it should be observed that irrespective of defendant's acquiescence in the screening procedure ultimately

adopted by the court, the propriety of even the limited closure during the course of this trial remains subject to appellate review. "When the procedure requested impacts on a defendant's right to a public trial, nothing less than an overriding interest can satisfy constitutional scrutiny" (*People v Jones*, 96 NY2d 213, 219, citing *Waller v Georgia*, 467 US 39, 48). The extent to which access to the courtroom is restricted has no bearing on the obligation to establish, at the outset, that closure is necessary to preserve a higher interest. Only when it is established that an overriding interest would be compromised by open proceedings does analysis proceed to whether the restriction on access is narrowly tailored and whether the court considered reasonable alternatives, all of which must be supported by findings of fact. As stated by the United States Supreme Court:

> "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure" (*Waller*, 467 US at 48).

As the Court of Appeals stated in *Jones* (*supra* at 217), a case on all fours, "The proponent of closure must first assert that a substantial probability of prejudice to a compelling interest will result from an open proceeding (*Press-Enterprise Co. v Superior Ct.*, 478 US 1, 14 [*Press-Enterprise II*]; *see also, People v Ramos*, [90 NY2d 490], at 498, [*cert denied sub nom. Ayala v New York*, 522 US 1002])."

■ In view of defense counsel's explicit objection to closure and his insistence on a *Hinton* hearing, there is no question that the propriety of imposing a restriction on access to the courtroom is preserved for this Court's review. Thus, in the context of this case, it is unnecessary to decide whether the public interest in open judicial proceedings places closure within the "very narrow exception to the requirement of a timely objection" because it affects "the mode of proceedings prescribed by law" (*People v Patterson*, 39 NY2d 288, 295, *affd* 432 US 197).

The first question to be decided is whether there was a compelling interest that justified restricting public access to the proceedings. Defendant contends that it is insufficient to demonstrate merely that the undercover officer would return to

work in the vicinity of the arrest, arguing that no facts have been shown to "establish a link between the undercover's future assignments in the area of the Defendant's arrest and a danger posed to the undercover by his open court testimony in this case." From the trial justice's remarks concerning the distance of the courthouse from the vicinity and the lack of casual visitors to the courtroom, defendant concludes that the court found the officer's "generalized fear too attenuated to warrant abridging the Defendant's public trial right."

Defendant concentrates entirely on the court's discussion of the need to close proceedings to the public generally and its discussion of the pertinent case law. However, at that juncture, the court's attention was not yet directed to the particular concern articulated by the witness—that he might be recognized on the street while working in an undercover capacity. Once the court appreciated that "there's a concern as to whether people from the area of 138th and Cypress might come in and identify him and jeopardize him," it immediately proposed the less restrictive measure of querying prospective observers concerning their place of residence.

The possibility that someone who lives in the vicinity of 138th Street and Cypress Avenue might enter the courtroom and observe the officer on the stand was hardly as remote as defendant now intimates. During the voir dire, one prospective juror stated, "I was raised on 138th Street between Cypress and St. Ann's." Another prospective juror stated that she possessed information about defendant that she could not reveal without "incriminating him." Although neither of these venirepersons was seated, a third person who resided in the neighborhood was selected to serve on the jury panel.

■ The undercover officer's concern that someone from the neighborhood where the arrest was made might observe his testimony and might recognize him when he returned to undercover work in the same area is supported by the record. Thus, the court's appreciation of the risk to the officer justifies its decision to undertake remedial action. An overriding interest has been identified and supported by adequate findings so as to justify abridgement of the right to a public trial.

Defendant further contends that defense counsel cannot be said to have "voluntarily, knowingly and intelligently waived his right to appeal a violation of his client's public trial right" by agreeing to the screening procedure proposed by the court. Rather, defendant argues, the only explanation for acquiescence is counsel's mistaken belief that a screening procedure

could be implemented without the need to establish an overriding interest that would be prejudiced by the undercover officer's open court testimony.

In light of this Court's conclusion that the record establishes a nexus between the undercover officer's future assignments in the area of defendant's arrest and the risk that persons from that area might identify the witness, this argument is unavailing. Nor is counsel's asserted misconception of the applicable law the only explanation for his acquiescence in the screening procedure, as defendant suggests. A more likely explanation is that the court's proposal was viewed as altogether reasonable. The court stated that it would not "admit people from that particular neighborhood, 138th and Cypress" and then asked defense counsel if he objected. Counsel responded, "From 138th? Well, no. Actually, we have a juror who lives in the neighborhood." It is clear from this exchange that counsel fully shared in the court's conclusion that persons who resided in the neighborhood where defendant was apprehended might appear in the courtroom.

The parties' attempt to reduce the propriety of closing the proceedings to a question of whether defendant waived his right to a public trial is fundamentally flawed. A defendant may waive a constitutional right, including the right to a public trial. The issue, however, is not whether the right to have a public trial can be waived; the operative question is whether the public can be excluded from judicial proceedings.

The criteria enunciated in *Waller* (*supra*, 467 US at 48) are designed to protect not only the interests of the defendant but those of the public at large, interests that are sometimes conflicting. A defendant's application to close pretrial proceedings to avoid adverse publicity necessarily abridges the public's limited right of access under the First and Fourteenth Amendments (*Waller, supra* at 44-45). By the same token, the publicity attendant on unrestricted access to the proceedings may infringe upon the defendant's right to a fair trial (*Press-Enterprise II, supra*, 478 US at 7).

The public interest in open judicial proceedings is sufficiently strong to place upon the proponent of closure, whether prosecution or defense, the burden to meet certain prerequisites before limits on access may be imposed (*United States v Doe, supra*, 63 F3d at 125-126 [same standard applies whether the prosecutor or the defendant seeks closure]). As the *Doe* court pointed out (at 126), in deciding *Waller* (*supra*), the United States Supreme Court applied the test announced in *Press-*

*Enterprise Co. v Superior Ct.* (464 US 501, 510 [*Press-Enterprise I*]), a case addressing the qualified right of access under the First Amendment, stating, "In sum, we hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise [I]* and its predecessors" (*Waller, supra*, 467 US at 47). In the absence of a party with standing to assert the public interest, the courts are obliged to protect the public's First Amendment right to attend judicial proceedings. As stated by the Court of Appeals in *People v Kin Kan* (78 NY2d 54, 57), "Closure remains only an exception to the mandatory postulate of open trials."

The People's contention that defendant's claim is not preserved because he expressly assented to the provisional screening procedure misapprehends the prerogatives sought to be protected by the requirements set forth in *Waller* (*supra* at 48). Even ignoring defendant's initial exception to the People's application, any waiver that may be said to result extends only to defendant's Sixth Amendment rights and not to the limited right of access afforded to the public and press by the First and Fourteenth Amendments. Thus, a defendant's failure to object to the exclusion of the public renders the issue of closure unpreserved only in those limited circumstances where the rights affected are exclusively those of the defendant, that is, where the proceedings are not open to the public (*e.g., Levine v United States*, 362 US 610, 619 [hearing on contempt motion in the course of grand jury proceedings]; *see Press-Enterprise II, supra* at 8-10).

Consideration appropriately turns to whether the limited restriction imposed upon access to the courtroom in this case was narrowly tailored to protect the overriding interests identified and whether the court considered available alternatives. It was the testimony of the undercover officer that he expected to return to work in the neighborhood of 138th Street and Cypress Avenue, and the concern expressed by the witness was that he might be recognized while engaging in future undercover activity. It is apparent that when the court analyzed the People's initial request to close the courtroom during the undercover officer's testimony, it found that the perceived danger could be alleviated by measures more closely tailored to the safety concerns expressed by the witness. The court immediately directed its attention to the next prong of the *Waller* test and suggested screening persons seeking admission to the courtroom, thus preempting further application from either side.

The screening device was implemented only during the undercover officer's testimony, and any restriction on access was further limited to persons residing in the neighborhood where defendant was apprehended. Before posting a court officer at the door, the court ascertained from defense counsel that no other friend or family member was expected to attend defendant's trial that afternoon, when the *Hinton* hearing was scheduled to be conducted (*see People v Garcia*, 271 AD2d 81, *affd* 95 NY2d 946). As such, the measure was narrowly tailored, in time and in locale, to accomplish its purpose and, in fact, resulted in excluding no person from the courtroom. Closure was no broader than necessary to protect the safety of the witness from the perceived danger.

As to the court's consideration of alternative measures, none were proposed by defendant. As stated in *People v Ramos* (90 NY2d 490, 505, *cert denied sub nom. Ayala v New York,* 522 US 1002), "If, at that point, the defendant had alternative measures in mind that he wished the court to consider, he had 'the responsibility of showing to the court's satisfaction that [they] would eliminate the dangers shown'" (quoting *Gannett Co., Inc. v DePasquale,* 443 US 368, 401 [Powell, J., concurring]). The defense offered no such alternatives, but assented to the measures proposed by the court. Once it is established that protection of an overriding interest is necessary and the means employed to protect that interest are narrowly tailored to the potential danger, the obligation to suggest more limited measures devolves upon the defendant (*People v Jones, supra,* 96 NY2d at 220), requiring him both to inform the court of his objection to the proposed procedure and to suggest a viable alternative. Having failed to raise any objection, defendant may not assign error to the procedure implemented by the court (*People v Gray,* 86 NY2d 10, 20-21 [failure to promptly apprise the court of the specific basis of a claim of error bars its assertion on appeal]). Therefore, the contention that alternative measures might have sufficed to protect the identity of the witness is unpreserved for review.

Accordingly, the judgment of the Supreme Court, Bronx County (Peter Benitez, J.), rendered March 27, 2000, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree, and sentencing him, as a second felony offender, to concurrent terms of $4^{1}/_{2}$ to 9 years and one year, respectively, should be affirmed.

Tom, J.P., Sullivan, Rosenberger and Ellerin, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered March 27, 2000, affirmed.